WILMERHALE

July 27, 2026

**David W. Bowker**

+1 202 663 6558 (t)
+1 202 663 6363 (f)
david.bowker@wilmerhale.com

**By ECF**

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> **Re:    Response to Willkie Farr & Gallagher LLP's July 24, 2026 Letter**
> *Shirley et al. v. Lafarge S.A. et al.*, No. 25-cv-04248 (E.D.N.Y.)
> *Finan et al. v. Lafarge S.A. et al.*, No. 22-cv-07831 (E.D.N.Y.)
> *Murad et al. v. Lafarge S.A. et al.*, No. 23-cv-09186 (E.D.N.Y.)

Dear Judge Garaufis:

On behalf of Defendants, we respond to Willkie Farr & Gallagher LLP's July 24, 2026 letter concerning Defendants' pending motion to disqualify the Willkie firm from further representation of Plaintiffs in the above-captioned actions. *See Shirley* ECF No. 110; *Finan* ECF No. 194; *Murad* ECF No. 151. Willkie argues that Defendants should not be permitted to seek Willkie's disqualification because my firm, WilmerHale, supposedly has a conflict of its own. That argument is wrong. There is no WilmerHale conflict, and Willkie's letter is an effort to obscure Willkie's own disqualifying conflict: its concurrent, direct, and ongoing representation of clients who are taking materially adverse positions in different proceedings concerning the same events. By contrast, the matter Willkie invokes was a limited, unrelated pro bono engagement that involved twenty hours of donated attorney time and ended more than twelve years ago.

*First*, my firm has no conflict. The former engagement identified by Willkie was a limited pro bono matter addressing discrete questions about compliance with U.S. Treasury regulations that are not implicated here. It involved approximately twenty hours of work by two WilmerHale lawyers, one of whom left the firm nearly a decade ago, relating to the Foley family's efforts, in which WilmerHale played no role, to obtain the release of a family member held in Syria. *See* Ex. 1, WilmerHale's July 24, 2026 Letter to Sparacino. The engagement concluded by May 2014. Willkie does not allege that WilmerHale obtained any confidential information from the Foleys, let alone any confidential information that has any bearing on these actions.

That long-concluded engagement did not involve Lafarge, did not concern the claims or defenses in these actions, and does not give rise to any conflict in these actions. As Defendants have detailed in their disqualification motion directed at Willkie, the conflict rules prohibit adversity to a *former* client only where the current and prior matters are "the same" or "substantially related." N.Y. R. Prof'l Conduct 1.9; D.C. R. Prof'l Conduct 1.9. Willkie's own

Page 2                                                        **WilmerHale**

conduct presents the core problem the conflict rules are designed to prevent:  representing current clients in concurrent, ongoing matters involving materially overlapping factual and legal issues while advancing materially inconsistent positions in those two proceedings.  My firm's former pro bono engagement, by contrast, involved regulatory advice unrelated to Lafarge and is not substantially related to these actions.

*Second*, Willkie is also wrong to focus on waiver and screening.  Because WilmerHale's former pro bono engagement is not the same matter or substantially related to these actions, neither waiver nor an ethical screen is required.  And although no screen was required, WilmerHale implemented formal screens out of an abundance of caution and to address Plaintiffs' stated concerns.  *See* Ex. 1, WilmerHale's July 24, 2026 Letter to Sparacino.  In addition, there has been no overlap of attorneys who worked on the Foley matter and who have worked or are working on the Lafarge actions.

Importantly, Willkie appears to lack critical information about these matters.  For weeks before Willkie filed its letter, WilmerHale had been in direct communication with counsel for the former clients—who are not plaintiffs in the three actions in which Willkie appears, and whom Willkie does not represent.  At their counsel's request, WilmerHale searched for the client file, transferred it along with time records confirming the limited nature of the engagement, and addressed counsel's questions by telephone and in writing.  On the same day Willkie filed its letter, WilmerHale's General Counsel, notwithstanding the absence of any conflict, proposed prophylactic measures to resolve any conceivable concern, including that WilmerHale would not cross-examine the former clients on the subject matter of the prior representation.  *See id.*  Willkie's letter omits all of this.  Instead, although Willkie played no role in the former engagement and does not speak for the former clients, it cynically placed this supposed "new information" before the Court hours later.  That sequence speaks for itself.

*Third*, unlike Willkie, which has taken contradictory legal and factual positions in substantially related matters, WilmerHale has taken no "conflicting positions."  Lafarge pleaded guilty to conspiring to provide material support to designated foreign terrorist organizations.  Lafarge has not argued, and will not argue, that this did not violate the law.  Its positions here are entirely consistent with Willkie's description of WilmerHale's advice to its former clients.  The statements Willkie excerpts from Defendants' briefing concern Lafarge's defenses to Plaintiffs' civil conspiracy claims; they are not assertions that criminal conspiracy and illegal payments are lawful.  Nor are Defendants' positions in these actions adverse to the former pro bono clients referenced in Willkie's letter: if Lafarge's arguments here prevail, they would not expose those individuals to criminal or civil liability of any kind.

*Fourth*, the same cannot be said of Willkie.  It is Willkie, not WilmerHale, that labors under a disqualifying conflict.  Willkie's central allegations in this Court—that its own current client, Lafarge's former CEO and Chairman Bruno Lafont, masterminded a criminal conspiracy to support terrorists—would, if credited, establish that client's criminal and civil liability.  Yet, for ten years, and continuing today, Willkie has defended Lafont in criminal and civil proceedings arising from the same alleged Lafarge conduct while simultaneously representing nearly 1,000

Page 3

WILMERHALE

Plaintiffs prosecuting claims against Lafarge based on Lafont's alleged criminal conduct. At this very moment, Willkie is advancing legal arguments and factual representations in U.S. and French proceedings that are diametrically opposed. And as Defendants have detailed, Willkie's conflict has not been and cannot be waived. That is why Willkie must be disqualified, and why its eleventh-hour effort to change the subject should be understood for what it is.

For these reasons and those set forth in Defendants' motion, Willkie's July 24 letter provides no basis to deny Defendants' pending motion to disqualify Willkie. The motion should be granted, and Willkie's attempt to manufacture a collateral issue concerning WilmerHale should be rejected.

Regards,

*/s/ David W. Bowker*
David W. Bowker
Counsel for Defendants