WILLKIE FARR & GALLAGHER LLP

August 31, 2026

**VIA ECF**
The Honorable Peggy Kuo
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Finan v. Lafarge*, 22-cv-07831

Dear Judge Kuo:

Following recent submissions regarding the conflict posture of WilmerHale ("Wilmer") in these proceedings, we write on behalf of Willkie Farr & Gallagher LLP ("Willkie") to seek a pre-motion conference in anticipation of Willkie's potential motion to disqualify Wilmer on two separate grounds: Wilmer's failure to screen a former government lawyer in charge of the prosecution of Lafarge and to obtain the necessary government consent, and Wilmer's direct adversity to a former client in a substantially related matter. *See Finan,* ECF No. 194; *Finan*, ECF No. 196. Although we would prefer to focus on the substance of these proceedings, Wilmer's own misplaced arguments in favor of Willkie's disqualification (which should not be credited) appear to require the disqualification of Wilmer.[1]

Wilmer partner Matthew Olsen oversaw the investigation and criminal prosecution of Lafarge while he was the Assistant Attorney General for the National Security Division at the U.S. Department of Justice ("DOJ").[2] Mr. Olsen's name appears on Lafarge's plea agreement with the United States, and Mr. Olsen appeared at the DOJ Press Conference regarding the plea, where he laid out the evidence supporting Lafarge's criminal conspiracy. *See United States v. Lafarge S.A., et al.*, 22-cr-00444 (E.D.N.Y.), ECF No. 10.[3] That was the same "matter" as the matter before this Court for purposes of the New York Rules of Professional Conduct. *See* N.Y. Rule of Pro. Conduct 1.11(a)(2) ("[A] lawyer who has formerly served as a public officer or employee of the government: . . . (2) shall not represent a client in connection with a *matter* in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.") (emphasis added). "[A] 'matter' may continue in another form. In determining

[1] Because this letter concerns a non-dispositive matter, Plaintiffs have directed it to Your Honor and not Judge Garaufis, who is copied. This Court's rules divide non-dispositive motions into two categories: discovery and non-discovery. Individual Rules § VI.A. The issue raised in this letter is non-discovery. Because Plaintiffs seek a conference prior to any motion practice, Plaintiffs have not filed a motion herewith consistent with Individual Rules § VI.B. In the event we have misdirected this letter to Your Honor instead of Judge Garaufis or otherwise misinterpreted this Court's rules, Plaintiffs will promptly make the necessary corrections as the Court may direct.
[2] While Mr. Olsen was listed as a partner on Wilmer's website when Willkie raised issues involving his screening and at the time of Lafarge's July 27 Letter discussed below, we understand that he recently separated from Wilmer and is not a partner there today.
[3] Matthew G. Olsen, Assistant Attorney General, National Security Division of the Dep't of Justice, Matthew G. Olsen Delivers Remarks on Lafarge Guilty Plea (Oct. 18, 2022), https://www.justice.gov/archives/opa/speech/assistant-attorney-general-national-security-matthew-g-olsen-delivers-remarks-lafarge.

whether two particular matters are the same, the lawyer should consider the extent to which (i) the matters involve the same basic facts, (ii) the matters involve the same or related parties, and (iii) time has elapsed between the matters." N.Y. Rule of Pro. Conduct 1.11 cmt. 10; *see United States v. Villaspring Health Care Ctr., Inc.*, 2011 WL 5330790, at *4 (E.D. Ky. Nov. 7, 2011) ("[*T]he fact that one matter was criminal and one is civil is not determinative*. Instead, the Court must analyze the matters' substance, rather than their forms. To determine whether two matters are the same, the court should 'consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed.'") (emphasis added). Here, both matters involve the same basic facts regarding Lafarge's illegal payments to ISIS and the same party (Lafarge).

Where, as here, a former government official is personally barred from representing a client in a matter on which he worked personally and substantially as a government official, his law firm must meet certain obligations under Rule 1.11(b) in order to avoid the disqualifying imputation of the conflict to his law firm. Wilmer did not comply with these obligations.

Wilmer did not "promptly" establish an effective screen around Mr. Olsen. Mr. Olsen joined Wilmer in May 2025, but Exhibit 1 to Wilmer's July 27, 2026 letter filed with the Court ("July 27 Letter") revealed for the first time that Wilmer did not screen Mr. Olsen from the Lafarge cases until January 28, 2026—long after we suspect Wilmer began receiving confidential information from Lafarge about this matter in 2025 and therefore knew or should have known that Wilmer had a conflict under Rule 1.11 that mandated a screen.[4] *Finan*, ECF No. 196-1 at 2. This is ironic. Wilmer has attempted unsuccessfully to find flaws with Willkie's two ethical walls relating to this matter, but Wilmer failed to erect any wall at all when it learned of the Olsen conflict, thus flouting its own obligation to "promptly and reasonably" screen from the Lafarge civil cases the former government official who oversaw the criminal prosecution of Lafarge arising from the same facts and same federal statute. *See* N.Y. Rule of Pro. Conduct 1.11(b).

In addition to failing to implement a timely screen, it appears Wilmer never took steps to "give written notice to the appropriate government agency to enable it to ascertain compliance with the provisions of this Rule," as required by Rule 1.11(b)(4). Since learning last month about the lack of a timely screen, Plaintiffs have communicated with Wilmer concerning Mr. Olsen, but Wilmer has declined to provide specific information as to if and when it notified the DOJ and when it first became aware of Mr. Olsen's conflict, among other things. *See* Ex. 1, Email Chain with David Bowker. Both timely screening and notification to the DOJ are required under Rule 1.11 to avoid disqualification. *See Essex Equity Holdings USA, LLC v. Lehman Bros., Inc.*, 909 N.Y.S.2d 285 (Sup. Ct. N.Y. Cnty. 2010) (granting motion to disqualify where firm failed to implement a screen until at least two months after becoming aware of the conflict involving former government lawyer, and where the firm failed to provide written notice to the government). The list of considerations Wilmer offers in its defense concerning Mr. Olsen's role or lack thereof in defending Lafarge at Wilmer are not relevant. *See* Ex. 1, Email Chain with David Bowker.

Compounding its failure to screen off confidential government information about Lafarge and notify the DOJ, Wilmer is in a position to use this information adverse to its former clients, the Foley family, who

[4] Wilmer's July 27 Letter reveals that Wilmer did not screen Mr. Olsen until after Wilmer first raised potential conflict issues with Willkie on January 22, 2026.

are lead plaintiffs in one of these related actions.[5] The Foleys have not waived that conflict and the Foleys have not accepted Wilmer's proposal to interpose conflict counsel to examine (and cross-examine) the Foleys (as discussed further below). Thus, with fact discovery coming to a close this Fall, and in the midst of depositions of scores of plaintiffs (including other lead plaintiffs in these related actions), Wilmer remains ethically barred from examining its former clients, the Foleys. Wilmer's professional obligations to its current client, Lafarge, are thus "materially limited" by its obligations to a former client, in contravention of Rule 1.7(a)(2) (as amended effective November 10, 2025). Wilmer is also opposing a former client in a substantially related matter, which is a textbook example of a conflict under Rule 1.9.

Even worse, Wilmer's July 27 Letter confirms that Wilmer failed to erect an ethical wall between the Foley and Lafarge matters until last month and that its lawyers have thus been defending its current client, Lafarge, while having full and unrestricted access to its former clients' confidential information, *in addition* to whatever confidential government information Mr. Olsen brought to Wilmer. We are not impugning the good faith or integrity of Mr. Olsen or any attorney on Wilmer's Lafarge team, but if good faith and integrity were sufficient protections for clients, for the public, and for our system of justice, the Rules of Professional Conduct would not need to mandate screening, notification to the government, and government consent in these situations.

Wilmer's prior representation of the Foleys, which lasted approximately nine months, concerned James Foley's kidnapping and possible payments to ISIS. While Wilmer tries to downplay it by mentioning five times in its July 27 Letter that it was a "pro bono" matter, this is irrelevant under the Rules of Professional Conduct. *See MC v. GC*, 881 N.Y.S.2d 845 (Sup. Ct. Bronx Cnty. 2009) (Gesmer, J.).

On top of that, as described in our July 24, 2026 letter, Wilmer has taken inconsistent positions in the two representations on the core issue of duress and necessity defenses in connection with making otherwise unlawful payments to ISIS. *Finan*, ECF No. 194 at 2. In this case, Wilmer argues that its current client, Lafarge, was compelled to pay ISIS because Lafarge allegedly faced "extreme violence, coercion, and fear" from ISIS, which "attacked and kidnapped its personnel" and "threatened it with violence." *Finan*, ECF No. 161. And yet in the Foley matter, the Foleys will testify that Wilmer advised them that they could not pay ISIS, even in the context of threats to the life of their kidnapped family member.

According to Wilmer, those inconsistent positions alone would be disqualifying. *Finan*, ECF No. 165-1 at 18 ("And, of course, even if a wall could have been constructed to solve the taint from its access to privileged information, it does nothing to cure the separate intractable problem requiring disqualification. Willkie's wall was not designed to stop—and has not stopped—its lawyers from advancing diametrically opposed legal arguments and factual assertions on behalf of clients with opposing interests in related parallel matters.").

[5] Just as neither the plaintiffs here nor Bruno Lafont are clients of Wilmer's, the Foleys are not clients of Willkie's. If Wilmer's standing arguments in support of its motion to disqualify Willkie are to be credited (which Willkie has disputed), they should apply equally to Wilmer, which argues: "Willkie's challenge to Lafarge's standing is baseless. Lafarge has standing as a party with a concrete interest in the integrity of these proceedings." *Finan*, ECF No. 165-1 at 18.

Wilmer's proposed solution to this obvious ethical problem is to interpose conflicts counsel. In Exhibit 1 to Wilmer's July 27 Letter, Wilmer's General Counsel denies the existence of any conflict, but nonetheless proposes that Wilmer "will not cross-examine [Lead Plaintiffs] Diane and John Foley or any other Foley relatives at deposition or trial" on certain topics and that "conflicts counsel will handle any questioning on those topics." *Finan*, ECF No. 196-1 at 3. But when Willkie proposed in these proceedings to address a purported conflict by using conflicts counsel for a potential deposition and cross-examination, Wilmer argued that such an offer was disqualifying. Specifically, Wilmer maintained that such an arrangement could not "mitigate harm" because recusal from questioning is "exactly the type of material limitation [on counsel's representation of its client] that supports disqualification." *Finan*, ECF No. 165-1 at 13-14 ("Willkie cannot avoid the conflict by passing off certain work to co-counsel . . . ."); *see also Finan,* ECF No. 135-2 at 20 ("This is itself a concession of the conflict . . . .").

Perhaps most troublingly, Wilmer obviously knew for months—including when it appeared before the Court on March 11, 2026 to discuss its allegations that Willkie's representation presents conflict issues—that it was directly adverse to its former clients, the Foleys, who are lead plaintiffs. Yet Wilmer did not disclose this conflict to the Court, to Plaintiffs, or to Willkie. Plaintiffs' counsel only discovered this conflict recently when the Foleys were collecting documents for production and produced their letter of engagement with Wilmer.

We would welcome the opportunity to address these issues with the Court as soon as may be practicable.

***

Respectfully submitted,

*/s/ Lee Wolosky*

Lee Wolosky

cc: The Honorable Judge Garaufis